## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| **KEITH GURLIDES, Individually and For Others Similarly Situated,** | **Case No.** |
| **v.** | **JURY TRIAL DEMANDED** |
| **CATAPULT HEALTH PA** | **COLLECTIVE ACTION** |

## COMPLAINT

### SUMMARY

1.      Plaintiff Keith Gurlides (Gurlides) brings this lawsuit pursuant to the Fair Labor Standards Act (FLSA) to recover unpaid overtime wages and other damages from Defendant Catapult Health PA (Catapult) for himself and all others similarly situated.

2.      Catapult failed to pay Gurlides and other similarly situated workers like him overtime as required under the FLSA.

3.      Instead, Catapult would cap Gurlides' and other similarly situated workers' time and require them to work off the clock

4.      Catapult failed to pay Gurlides and other similarly situated workers for all compensable hours (including those in excess of 40 in a workweek) and improperly reduced the number of regular and overtime hours it paid them.

5.      Catapult required Gurlides and the Putative Class Members to work off the clock that went unpaid.

6.      Catapult would unilaterally decrease the time on its employees' timesheets.

7.      Catapult paid Gurlides and the Putative Class Members a regular rate and a variable rate but failed to consider this blended rate in determining overtime compensation.

## JURISDICTION AND VENUE

8.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this Action involves a federal question under the FLSA.

9.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

10.     Catapult's headquarters are in Dallas, Texas, in this District and Division.

## THE PARTIES

11.     Gurlides was an hourly employee of Catapult.

12.     Gurlides worked for Catapult from approximately July 2017 until May 2022 throughout various states, including Texas, Georgia, Alaska, and North Carolina.

13.     Catapult excluded and mischaracterized certain compensable hours Gurlides and the Putative Class Members worked from the hours it used to calculate their pay, improperly reducing the number of weekly regular and overtime hours it paid them.

14.     Catapult went as far as the alter certain Putative Class Members timesheets.

15.     Gurlides' consent to be a party plaintiff is attached as **Exhibit A**.

16.     Gurlides brings this action individually and on behalf of hourly workers that worked for or on behalf of Catapult in the past three years who were not paid for all hours worked, including both regular and overtime hours (collectively referred to as the Putative Class Members).

17.     Gurlides brings this action on behalf of himself and the class of all similarly situated employees, properly defined as:

> **All current and former hourly employees that worked for Catapult Health PA in the past three years, who (1) were not paid for all hours worked, including both regular and overtime hours;  or (2) were not paid overtime at the correct blended rate** (Putative Class Members).

18.     The Putative Class Members are easily ascertainable from Catapult's business and personnel records.

19.    Issuance of Court-Authorized Notice is critical because after Catapult was sued in Pennsylvania state court for violations of the Pennsylvania Minimum Wage Act (PMWA), Catapult began to rollout illegal arbitration agreements.

20.    Catapult intended to have members of the PMWA state law proposed class and Gurlides' proposed class sign away their rights to join a class or collective action.[1]

21.    Catapult Health PA is a Texas Professional Association doing business throughout the United States. Catapult may be served by serving its registered agent: David L. Michel, 5294 Belt Line Road, Suite 200, Dallas, TX 75254.

## COVERAGE UNDER THE FLSA

22.    At all times hereinafter mentioned, Catapult was and is an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

23.    At all times hereinafter mentioned, Catapult was and is an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

24.    At all times hereinafter mentioned, Catapult was and is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

25.    Catapult has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been

---

[1] The class in *Sagna v. Catapult Health PA*, 2:22-cv-03975, Doc. 1 (E.D. Pa., Aug. 24, 2022) does not overlap with Gurlides' proposed class because Gurlides only brings FLSA claims and Sagna brings only PMWA claims.

moved in or were produced for commerce, such as medical equipment, automobiles, computers, and cell phones.

26.     At all times hereinafter mentioned, Gurlides and the Putative Class Members were engaged in commerce or in the production of goods for commerce per 29 U.S.C. §§ 206-207.

## THE FACTS

27.     Catapult provides in-person and virtual healthcare services to patients across the United States.

28.     To provide these services, Catapult employs Traveling Health Technicians.

29.     Gurlides worked for Catapult as a Team Lead Travel Health Technician from approximately July 2017 until May 2022.

30.     Gurlides worked for Catapult at various locations throughout the country, including Texas, Georgia, Alaska, and North Carolina.

31.     As a Travelling Health Technician, Gurlides set up temporary health clinics.

32.     These Traveling Health Technicians (like Gurlides) administered the testing and screening of patients during their appointments with Catapult's healthcare providers and reported all patient information into Catapult's EMR (Electronic Medical Record) system.

33.     This would include setup and take down of mobile or temporary sites.

34.     Although Gurlides and the Putative Class Members were regularly scheduled to work an 8 hour clinical shift, they would frequently be required to work more than their scheduled shift.

35.     As a Travelling Health Technician, Gurlides was regularly required "to report to work as early as 4 AM and end as late as 5 PM."[2]

---

[2] *See* https://www.linkedin.com/jobs/view/traveling-health-technician-dallas-tx-at-catapult-health-3014862265/ (last visited December 19, 2022).

36.     As a Travelling Health Technician, Gurlides was regularly required to travel hours to a site.

37.     As a Travelling Health Technician, Gurlides was regularly required to travel "to and from events within a 100-mile radius."[3]

38.     Gurlides reported the hours he worked to Catapult on a regular basis, including his travel time.

39.     Even though Gurlides and the Putative Class Members reported their hours worked (including travel time), Catapult did not pay them for all hours worked.

40.     If Gurlides worked fewer than 40 hours in a week, he was only paid for the hours worked.

41.     If Gurlides' combined work and travel time in a day exceeded 10 hours, he was only paid for 10 hours. For example, if Gurlides traveled 8 hours to a job location and worked for 8 hours that day, Gurlides would only be compensated for 2 hours of travel time and 8 hours of clinic time.

42.     Or for example, if Gurlides traveled 3 hours to a job location, set up for an hour, conducted clinic for 8 hours, and then drove 3 hours, he was only paid for 8 hours of clinic and 2 hours of drive time.

43.     Gurlides and the Putative Class Members were required to auto deduct a mandatory 30 minute lunch break from their timesheets.

44.     Gurlides and the Putative Class Members' work schedule did not permit them to actually take a 30 minute lunch break.

45.     For example, if Gurlides was supposed to take his lunch break at noon, but a patient was scheduled, he would see the patient and take a shorter break to eat lunch.

---

[3] *Id.*

46.     However, Catapult still required Gurlides and the Putative Class Members to auto deduct 30 minutes for lunch.

47.     While all his pay stubs might not reflect it, Gurlides regularly worked over 40 hours in a week.

48.     In fact, Gurlides routinely worked 40-50 hours per week. Only some of the hours Gurlides and the Putative Class Members worked are reflected and recorded in Catapult's pay and time records.

49.     Catapult routinely failed to carefully and exactly record the hours their employees spent performing work on its behalf.

50.     Catapult regularly mischaracterized the type of work performed by its employees (including Gurlides) to avoid paying them in full for all of the hours they worked, including their overtime hours.

51.     Catapult improperly paid Gurlides and the Putative Class Members at two or more different rates of pay in a single workweek and failed to accurately pay these workers using a legal blended rate.

52.     Instead, Catapult paid two different rates for overtime worked—clinic rates and variable rates—a practice which artificially reduced the amount of overtime the worker received each week.

53.     Additionally, Catapult failed to pay Gurlides and the Putative Class Members for all of the work they performed, specifically for:

   a.   Overnight travel away from their home community;
   b.   Travelling to and from special one-day assignments in another city;
   c.   Travelling to, from, and between job locations;
   d.   Work performed while travelling;
   e.   Attending mandatory training and compliance sessions;

    f.   Shortened lunch breaks;

    g.  Shuttle time to a special one-day assignment;

    h.  Set up time before clinic opened; and

    i.   Waiting time before clinic opened.

54.    Catapult uniformly applied its illegal policy of excluding certain hours from compensation to Gurlides and the Putative Class Members, regardless of their specific job title or duties.

55.    Catapult's payment scheme violates the FLSA.

56.    Catapult did not pay Gurlides and the Putative Class Members at their regular rate for all hours worked up to 40 in a workweek.

57.    Catapult did not pay Gurlides and the Putative Class Members at time and a half for all hours worked over 40 in a workweek.

58.    Catapult was and is aware of the overtime requirements of the FLSA.

59.    Catapult nonetheless fails to pay certain employees, such as Gurlides, overtime.

60.    Catapult did not conduct any investigation as to whether its pay policy violated to FLSA.

61.    Catapult did not conduct any investigation as to whether its policies required its employees to perform off the clock work.

62.    Catapult did not conduct any investigation as to whether it could alter its employees' timesheets.

63.    Catapult's failure to pay all hours, including overtime to these workers was, and is, a willful violation of the FLSA.

## COLLECTIVE ACTION ALLEGATIONS

64.    Gurlides incorporates the preceding paragraphs by reference.

65.     Gurlides brings his claim under the FLSA. The Putative Class Members are similarly situated to Gurlides in all relevant respects.

66.     The Putative Class Members were victimized by Catapult's uniform pay policy which is in violation of the FLSA.

67.     Other Putative Class Members worked with Gurlides and indicated they were paid in the same manner (without overtime and for less than all hours worked).

68.     Other Putative Class Members worked with Gurlides, and they performed similar services for Catapult.

69.     Indeed, other Putative Class Members worked with Gurlides, and, regardless of their precise job title, their job duties were to provide health care services in accordance with Catapult's policies, procedures, plans, and regulations.

70.     Based on his experiences with Catapult, Gurlides is aware Catapult's illegal pay plan was imposed on the Putative Class Members.

71.     The Putative Class Members are similarly situated in all relevant respects.

72.     Even if their precise job duties or job locations varied somewhat, these differences do not matter for the purposes of determining their entitlement to unpaid wages and unpaid overtime.

73.     All the Putative Class Members were not paid for all of their work, including overtime hours worked.

74.     The illegal payment scheme that Catapult imposed on Gurlides was likewise imposed on the Putative Class Members.

75.     Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

76.     The Putative Class Members were similarly denied overtime when they worked more than 40 hours per week.

77.     The overtime and regular wages owed to Gurlides and the Putative Class Members will be calculated using the same records.

78.      The overtime and regular wages owed to Gurlides and the Putative Class Members will be calculated using the same formula.

79.     Gurlides' experiences are therefore typical of the experiences of the Putative Class Members.

80.     The specific job titles or precise job locations of the various members of the class do not prevent a collective action.

81.     Gurlides has no interest contrary to, or in conflict with, the Putative Class Members that would prevent a collective action.

82.     Like each Putative Class Member, Gurlides has an interest in obtaining the unpaid overtime wages owed under the FLSA.

83.     A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

84.     Absent a collective action, many Putative Class Members will not obtain redress of their injuries.

85.      Absent a collective action, Catapult will reap the unjust benefits of violating the FLSA.

86.     Further, even if some of the Putative Class Members could afford individual litigation against Catapult, it would be unduly burdensome to the judicial system.

87.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

88.     The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

89.     Among the common questions of law and fact are:

    a. Whether Catapult's decision to not pay for all hours worked violated the FLSA;

    b. Whether Catapult's failure to pay overtime at the correct blended rate violated the FLSA;

    c. Whether Catapult's decision to not pay overtime compensation to these workers was made in good faith; and

    d. Whether Catapult's illegal pay practice applied to all Putative Class Members.

    e. Gurlides and the Putative Class Members sustained damages arising out of Catapult's illegal and uniform compensation policy.

90. Gurlides knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

91. Catapult is liable under the FLSA for failing to pay overtime and regular wages to Gurlides and the Class Members.

92. Consistent with Catapult's illegal pay plan, Gurlides and the Putative Class Members were not paid the proper regular wages or premium overtime compensation when they worked more than 40 hours in a workweek.

93. As part of their regular business practices, Catapult intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Gurlides and the Putative Class Members.

94. Catapult was aware, or should have been aware, that the FLSA required it to pay Gurlides and the Putative Class Members for all hours worked, including overtime premiums for all hours worked in excess of 40 hours per workweek.

95. There are numerous similarly situated Putative Class Members who have been denied overtime pay during the relevant time period in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

96.     Those similarly situated employees are known to Catapult, are readily identifiable, and can be located through Catapult's records.

## VIOLATIONS OF THE FLSA

97.     Gurlides incorporates the preceding paragraphs by reference.

98.     By failing to pay Gurlides and the Putative Class Members overtime at one-and-one-half times their regular rates, Catapult violated the FLSA's overtime provisions.

99.     Catapult owes Gurlides and the Putative Class Members overtime pay at the proper overtime rate.

100.    Because Catapult knew, or showed reckless disregard for whether, its pay practices violated the FLSA, Catapult owes these wages for at least the past three years.

101.    Catapult is liable to Gurlides and the Putative Class Members for an amount equal to all unpaid overtime wages as liquidated damages.

102.    Gurlides and the Putative Class Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## JURY DEMAND

103.    Gurlides demands a trial by jury

## PRAYER

104.    WHEREFORE, Gurlides prays for judgment and all other legal and equitable relief they may be entitled, as follows:

      a.      An order allowing this action to proceed as a collective action under the FLSA and directing notice to the Putative Class Members;

      b.      A judgment finding Catapult liable to Gurlides and the Putative Class Members for unpaid overtime and an equal amount as liquidated damages;

      c.      An order awarding attorneys' fees, costs, expenses, and judgment interest; and

d.      An award of such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
**Michael A. Josephson**
State Bar No. 24014780
**Andrew W. Dunlap**
State Bar No. 24078444
**Richard M. Schreiber**
State Bar No. 24056278
**JOSEPHSON DUNLAP, LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rschreiber@mybackwages.com

**AND**

**Richard J. (Rex) Burch**
State Bar No. 24001807
**BRUCKNER BURCH, PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**